**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**"IN ADMIRALTY"**

BUNKERS INTERNATIONAL
CORPORATION, et al.,

    Plaintiffs,

CASE NO. 3:10-cv-315-J-32TEM

vs.

M/V ANASAZI, its engines, tackle and
apparel, et al.,

    Defendants and Garnishees.
_____/

**O R D E R**

This matter is before the Court on Captain Timothy A. Brown's motion to intervene (Doc. #106, Motion), Plaintiff Bunkers International Corporation's response in opposition thereto (Doc. #114), and Captain Brown's reply brief (Doc. #127). Upon review of the aforementioned documents, the Court determined a hearing was warranted. Thus, a hearing was held before the undersigned on February 8, 2011 (*see* Doc. #159, Minutes). For the reasons stated herein, and on the record at the hearing, the motion to intervene shall be granted.

By way of background, on April 28, 2010, the Court ordered the interlocutory sale of the M/V ANASAZI (*see* Docs. #64 and #69). Pursuant to said Order, the vessel was sold at auction by the United States Marshals Service on May 6, 2010 (*see* Doc. #98, Confirmation of Sale).

Local Rule 7.05(s) Admiralty and Maritime Rules, for the Middle District of Florida, provides that: "Claims against the proceeds of a sale authorized by these rules, except for seamen's wages, will not be admitted on behalf of lien holders that filed their claims after the sale."

In this instance, Captain Brown, who is the chairman of the International Organization of Masters, Mates, and Pilots (the "Union"), moves to intervene post-sale, contending that certain amounts not remitted by AHL Shipping (the owner/operator of the M/V ANASAZI) to a vacation pay fund and an individual retirement account plan should be considered "wages" of the crew (Doc. #106 at 6-9).

Plaintiff Bunkers, however, maintains that such plan benefits should not be considered as seaman's wages, and that Captain Brown's motion to intervene should thus be denied (Doc. #114 at 6). In support of this contention, Plaintiff Bunkers cites a multitude of cases which have held that monies due and owing to collective bargaining agreement plans are not "wages" of the crew, as such monies are due to third parties and the seaman themselves have no direct claim the contributions of their employer (Doc. #114 at 2-6). *See, e.g., Barnouw v. S.S. Ozark*, 304 F.2d 717, 719-20 (5th Cir. 1962), *cert. denied*, 371 U.S. 923 (1962); *Brandon v. S.S. Denton*, 302 F.2d 404, 415-16 (5th Cir. 1962); *Prudential Insurance v. United States Lines, Inc.*, 915 F.2d 411, 412 (9th Cir. 1990); *Puerto Rico Maritime Shipping Authority v. Point Vigilance Corp.*, 643 F. Supp. 661, 662 (M.D. Fla. 1985).

While acknowledging that the cases cited by Bunkers, *supra*, hold that monies due and owing to collective bargaining agreement plans are not "wages" of the crew, Captain

Brown maintains that the matter here is distinguishable since the seamen can show they have a direct claim to such monies, and that they have suffered a direct loss due to AHL's nonpayment (Doc. #127 at 2-15). Captain Brown cites various cases which appear to indicate that, where an individual seaman can show that he or she has a direct claim to monies owed to a fund, and can show a direct loss due to nonpayment, a maritime lien for seaman's wages may lie (Doc. #127 at 3-15). *See e.g., Banco de Credito Industrial, S.A. v. Stolt Luisa Pando M/T*, 990 F.2d 827, 837 (5th Cir. 1993); *West Winds, Inc. v. M/V Resolute*, 720 F.2d 1097 (9th Cir. 1983); *Long Island Tankers Corporation v. S.S. Kaimana*, 265 F. Supp. 723 (N.D. Cal. 1967).

Captain Brown additionally references provisions of the subject collective bargaining agreement ("CBA") that set forth the parties' intention to consider any payments into the vacation pay fund as wages of the crew, "due in the same manner as other wages" (Doc. #127 at 14; *see also* Doc. #106-2 at 29). At the hearing, counsel for Captain Brown stated that, if one of the covered M/V ANASAZI's seaman related to the subject proposed intervention went to the Union Hall and attempted to obtain his or her vacation pay, due and owing from AHL, such a request would be denied because of AHL's nonpayment (*i.e.*, the seaman would suffer a direct and quantifiable loss in this instance) (Doc. #159). Counsel for Captain Brown additionally stated that such a seaman's individual retirement account would also be short the amount due and owing by AHL, and that these monies would not in any way be replaced, or otherwise offset, by the individual retirement account plan (Doc. #159).

In further support of his contentions, Captain Brown filed an affidavit of Kenneth T. Ryan, the Benefits Director of the International Organization of Masters, Mates, and Pilots (Doc. #127-1, Affidavit). In the Affidavit, Mr. Ryan states, *inter alia*:

> When AHL Shipping is delinquent in paying the vacation pay into the Vacation Plan, AHL Shipping becomes liable directly to the seaman/employee for the payment of the vacation benefits. The seaman's claims against AHL Shipping may be, and has been in this situation, assigned to the Vacation Plan which shall assert the claim against AHL Shipping, and if a recovery is made, the Vacation Plan must pay the seaman the full amount of the recovery. When AHL Shipping became delinquent more than one month in failing to pay the required contributions to the Vacation Plan, AHL Shipping was required to pay the vacation pay, wages and overtime directly to the seamen upon their departure from the ship. AHL Shipping did not pay the seamen their vacation pay when they departed from the ship, in violation of the CBA [collective bargaining agreement]. AHL Shipping agreed in the CBA, attached hereto, that the vacation pay, once it became delinquent, would be paid in the same manner as other wages and was to be construed as wages.

(Doc. #127-1 at 2, ¶ 3).

Seamen are wards of admiralty whose rights federal courts are duty-bound to jealously protect. *Isbrandtsen Marine Services, Inc. v. The MIV Inadgua Tania*, 93 Fd. 3rd 728, 733 (11th Cir. 1996). A super priority is afforded seamen's liens for wages and said wage liens are entitled to be paid "as long as a plank of the ship remains." *The John G. Stevens*, 170 U.S. 113, 119 (1898). It follows that seamen are entitled to have ambiguities ruled in their favor.

In this instance, Captain Brown has provided evidence that supports his assertion that the seamen here can show they have a direct claim to such plan monies and have suffered a direct loss due to AHL's nonpayment into the subject plans. As such, pursuant to the case law cited by Captain Brown, *supra*, these amounts may be subject to a

maritime lien. Consequently, the Court finds the motion to intervene should be granted in order to allow discovery to determine what maritime liens are valid and the priority of those liens. The parties may, of course, reassert their respective positions at any summary judgment proceedings or at trial.

Base on the foregoing, it is hereby **ORDERED**:

1.    Captain Timothy A. Brown's motion to intervene (Doc. #106) is **GRANTED**.

2.    The **Clerk is directed to file** the Verified Intervening Complaint, which is attached to the Motion as Document #106-1.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of February, 2011.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge